IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CLASSY GLASS, INC.,

                Plaintiff,

v.

THE CINCINNATI INSURANCE COMPANY,
THE CINCINNATI CASUALTY COMPANY, and
THE CINCINNATI INDEMNITY COMPANY,

                Defendants.

OPINION and ORDER

21-cv-221-jdp

---

Plaintiff Classy Glass, Inc., asserts breach of contract and bad faith claims against its insurers, defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, and The Cincinnati Indemnity Company. Classy Glass contends that defendants violated its rights under the policy by refusing to cover losses caused by the COVID-19 pandemic and associated government shutdown orders.

Defendants move to dismiss for failure to state a claim. Dkt. 24. The policy language at issue covers income losses caused by direct physical loss or physical damage. Defendants contend that neither the COVID-19 pandemic nor the resulting closure orders caused that type of loss or damage to plaintiff's property.

The court will grant the motion. The Seventh Circuit recently concluded that the terms physical loss and physical damage in a property insurance policy unambiguously refer to tangible alterations to property. *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021). Neither the closure orders nor the coronavirus itself caused any physical change to Classy Glass's businesses, so its losses do not fall within the scope of its policy.

BACKGROUND

In considering a motion to dismiss for failure to state a claim, the court takes all facts pleaded in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The court may also consider documents outside the complaint if they are referred to in the complaint, concededly authentic, and central to the plaintiff's claim. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). The court draws the following facts from plaintiff's amended complaint, Dkt. 17, as well as plaintiff's insurance policy, Dkt 17-1, the government closure orders, Dkt 17-2 and Dkt. 17-3, and defendants' letter denying plaintiff's claim for coverage, Dkt. 17-5.

Plaintiff Classy Glass is a Wisconsin corporation that operates three businesses in Madison, Wisconsin: a glass-blowing studio, a store selling glass products, and a convenience store. It also operated a glass-blowing studio in Denver, Colorado. It has commercial property insurance for its businesses from defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, and The Cincinnati Indemnity Company. The court will discuss the relevant language of those policies in the analysis section of the opinion.

Like many businesses, Classy Glass was affected by the COVID-19 pandemic. In early 2020, Classy Glass came to believe that its retail locations had been "physically infected with COVID-19" because both Madison and Denver were considered COVID "hotspots," Dkt. 17, ¶ 56. Classy Glass voluntarily closed their retail locations due to the "physical presence of COVID-19 virus particles." *Id*. at ¶ 57.

In March, Colorado Governor Jared Polis issued an executive order that limited what non-essential businesses were allowed to remain open, and at what capacity. Soon after, Wisconsin Governor Tony Evers issued a similar order affecting businesses in Wisconsin. Two

of Classy Glass's Wisconsin businesses and their Colorado business were deemed non-essential. As a result of the "pandemic and resultant government shutdown orders," Classy Glass had to close those locations for "a minimum of five months." *Id.* at ¶ 59. The glass-blowing studio in Denver has closed permanently. It is unclear whether Classy Glass had re-opened its other locations at the time of filing; it alleges that it "resumed or will resume business operations as soon as was possible." [sic] *Id.* at ¶ 76.

In April 2020, Classy Glass submitted a claim for Business Interruption coverage and Civil Authority coverage under its policy with defendants. Defendants denied the claim, contending that closures due to the COVID-19 pandemic fell outside scope of their commercial property insurance policy. Dkt. 17-5, at 3.

## ANALYSIS

To survive defendants' motion to dismiss, Classy Glass must allege facts that "sketch a claim that is within the scope of the policy." *W. States Ins. Co. v. Wis. Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999). Classy Glass contends that its COVID-related losses are covered by its policy's Business Income and Civil Authority provisions.

Both provisions provide coverage for income losses resulting from a "Covered Cause of Loss." The Business Interruption coverage is triggered when business operations are suspended as a result of a "Covered Cause of Loss." The policy states in relevant part:

> We will pay for the actual loss of "Business Income" . . . you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The Suspension must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

Dkt. 17-1, at 37.  The Civil Authority coverage is triggered when a "Covered Cause of Loss" causes direct damage to neighboring property and the government prohibits access to the premises. The policy states in relevant part:

> When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises," we will pay for the actual loss of "Business Income" you sustain . . . caused by action of civil authority that prohibits access to the "premises."

*Id.* at 83.

The critical term, "Covered Cause of Loss," is defined as "direct 'loss,'" subject to enumerated exceptions. *Id*. at 24. And "loss" is defined as "accidental physical loss or accidental physical damage." *Id*. at 90. In this case, there is no dispute that Classy Glass's losses are accidental. The question is whether Classy Glass's losses were the result of "physical loss" or "physical damage." Classy Glass contends that the closure orders caused a "physical loss" because the orders prevented the use of physical retail spaces. It also contends that the coronavirus itself caused "physical damage" to its retail stores and neighboring businesses because the virus is made up of physical particles that can attach to surfaces.[1]

The parties assume that Wisconsin law applies to Classy Glass's claims, so the court will do so as well. *See FutureSource LLC v. Reuters Ltd*., 312 F.3d 281, 283 (7th Cir. 2002). No Wisconsin court of appeal has ruled on the meaning of the precise language at issue, though the Wisconsin Supreme Court will soon take up the question of whether "physical loss" and "physical damage" includes COVID-related closures. *Colectivo v. Society, 2021AP463* (direct

---

[1] The complaint refers to the presence of "COVID-19 particles." As a point of clarification, COVID-19 is the name of the disease caused by the novel coronavirus SARS-CoV-2. *See* University of Utah Health Communications, *Coronavirus (COVID-19) FAQs*, (Mar. 10, 2020), *available at* https://healthcare.utah.edu/healthfeed/postings/2020/03/covid19-faqs.php.

appeal from the trial court). But Classy Glass's arguments have been effectively foreclosed by the Seventh Circuit's recent decision in *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021), which addressed claims for COVID-19 related coverage under an insurance policy that was materially identical to the one at issue in this case. *Sandy Point Dental* was decided after this motion was fully briefed. But the case establishes that the terms "physical loss" and "physical damage" refer to tangible alterations to property and do not encompass a loss of use caused by COVID-19.

The Seventh Circuit reasoned that because "loss" was modified by "physical," the loss must have a material dimension. *Id.* at 331. Thus, "physical loss" could not be reasonably interpreted to encompass mere loss of use where there has been no tangible change to property. The court concluded that neither the government orders nor the coronavirus itself cause a material alteration to property, so the loss of plaintiffs' business income was not covered by the policy. *Id*. The plaintiffs in *Sandy Point Dental* did not argue that they had suffered "physical damage" under the terms of their policy, so the court did not address the meaning of that specific phrase. But "damage" is also modified by "physical," so it too must refer to damage that changes the physical characteristics of covered property. (This conclusion is also implicit in the ruling; the court determined that plaintiffs had not suffered a "loss," which encompassed both physical loss and physical damage. *Id.*)

*Sandy Point Dental* effectively disposes of Classy Glass's claim. *Sandy Point Dental* was decided under Illinois law. But both Wisconsin and Illinois law interpret insurance contracts using common principles of contract interpretation. *Compare Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150, *with Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). And the insurance policy

at issue in *Sandy Point Dental* is materially identical to the policy at issue in this case.[2] So there is no reason that this court should reach the opposite conclusion about whether a loss of use caused by the coronavirus is a "physical loss."

This result also finds support in cases applying Wisconsin law. For example, in *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co*, the Wisconsin Supreme Court concluded that the meaning of the term "physical injury" in a product insurance policy was limited to tangible damage to the covered items. 2000 WI 26, 233 Wis. 2d 314, 607 N.W.2d 276. The policy did not cover economic losses merely because the losses were related to the use and sale of a physical item. And in *Am. Motorists Ins. Co. v. Trane Co*., the Seventh Circuit applied Wisconsin law to determine that coverage for a "physical injury to . . . tangible property . . . including the loss of use thereof" implies that the loss of use "must have its origin in a physical infirmity." 718 F.2d 842, 844 (7th Cir. 1983). Accordingly, the only other federal court to decide whether COVID-related closures are a "physical loss" under Wisconsin law concluded that "[d]irect physical loss . . . unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage." *See Biltrite Furniture, Inc. v. Ohio Sec. Ins. Co.*, No. 20-CV-656-JPS, 2021 WL 3056191, at *4 (E.D. Wis. July 20, 2021) (internal quotation omitted).

Classy Glass resists this conclusion and contends that "physical loss" does not unambiguously refer to alterations to property. It notes that the policy includes exclusions for damage caused by certain pollutants, including radioactive contamination, fungi, bacteria, and "smoke, vapor, and gas." Dkt. 17-1, at 25–28. Classy Glass argues that none of those substances cause a physical alteration to the property; but there would be no reason to exclude them if it

---

[2] In fact, a defendant in this case, the Cincinnati Insurance Company, was also the defendant in *Sandy Point Dental*.

were not covered by the policy in the first place. Thus, the argument goes, "physical loss" must at least include contamination by physical irritants that do not alter the property, such as coronavirus particles.

The plaintiffs in *Sandy Point Dental* made a similar argument. *See Sandy Point Dental*, 20 F.4th at 332. It appears that Classy Glass's policy has more enumerated exceptions than the policy at issue in *Sandy Point Dental*; the Seventh Circuit addressed only an exception for radioactive contamination. *Id*. But that difference does not demand a different result. The enumerated irritants in Classy Glass's policy *can* cause physical alternation to property. Radioactive contamination can cause decay, fungi and bacteria can eat away at a building's structure, and smoke, vapor, and gas can seep into the walls. But the coronavirus "may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days." *Id*. at 335.

The Seventh Circuit did not need to determine whether radiation could cause a tangible change to property to dispose of this argument. *Id*. at 333. ("we need not wade into a debate about engineering or materials science."). The exception for contaminants did not prove that coronavirus particles caused a "physical loss," for two reasons.

First, the policy in *Sandy Point Dental* had other "textual clues" that "reinforce[d] the conclusion that 'direct physical loss' requires a physical alteration to property." *Id.* Namely, the policy provided coverage for losses sustained during a "period of restoration," which is defined by reference to "[t]he date [by which] the property . . . should be repaired, rebuilt, or replaced." *Id.* (alterations in original). And it follows that "without a physical alteration to property, there would be nothing to repair, rebuild, or replace." *Id.* Classy Glass's Business Interruption policy contains the same definition of "period of restoration" as the policy in *Sandy Point Dental*, *see*

Dkt. 17-1 at 57–58, 90, so the Seventh Circuit's reasoning is instructive. If coverage were triggered without any alteration to property, the "period of restoration" would go on indefinitely.

Second, the court noted that an insured can suffer "physical loss" absent a tangible change to property if gas or vapor renders a property completely uninhabitable. *Sandy Point Dental*, 20 F.4th at 334 (citing *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52, 55 (1968)). But to be tantamount to a "physical loss," the contamination must be so dangerous and pervasive that physical entry is impossible. *Id.* Here, although Classy Glass was unable to put its stores to its preferred use, the coronavirus particles did not lead to complete dispossession of the property.

This court concludes that neither the virus nor the closure orders cause "physical loss" or "physical damage." Thus, Classy Glass's closure was not caused by a "Covered Cause of Loss," so it is not entitled to Business Interruption coverage. And because the neighboring buildings did not suffer damage resulting from a "Covered Cause of Loss," Classy Glass is not entitled to Civil Authority coverage.

Defendants were not obligated to pay Classy Glass's claims for COVID-related losses. A plaintiff can sustain a claim for bad faith only if the policy's terms obligated the insurer to pay the claim. *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 54, 334 Wis.2d 23, 798 N.W.2d 467. Accordingly, the court will dismiss Classy Glass's bad faith claim.

CONCLUSION

Ordinarily, a plaintiff whose complaint has been dismissed under 12(b)(6) may be given an opportunity to amend the complaint before the entire action is dismissed. *Runnion v. Girl*

8

*Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015). But here, amendment would be futile. Given the court's interpretation of the policy, closures related to COVID-19 were not caused by physical alteration to their property, and thus Classy Glass cannot allege bad faith on the part of defendants. The case will be dismissed.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, Dkt. 24, is GRANTED.

2. Plaintiff Classy Glass's motion in the alternative for leave to amend its complaint, Dkt. 26. is DENIED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered February 23, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge